Case 4:15-cv-03002   Document 58   Filed in TXSD on 06/29/16   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
June 29, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RYAN RIVA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:15-CV-3002 |
| § | |
| SCHLUMBERGER TECHNOLOGY § | |
| CORPORATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Pending before the Court is the plaintiff's, Ryan Riva (the "plaintiff"), individually and on behalf of all others similarly situated, motion for conditional certification of a class of workers whom he asserts performed similar job duties and received similar salaries, without any overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (*See* Dkt. No. 18). The defendant, Schlumberger Technology Corporation (the "defendant"), filed a response in opposition to the plaintiffs' motion, (Doc. No. 23). On March 21, 2016, this Court entered a short order granting the plaintiff's motion for conditional certification. (*See* Dkt. No. 27).

On March 28, 2016, the defendant filed a motion for reconsideration and alternative motion to certify interlocutory appeal, (Dkt. No. 29), to which the plaintiff filed a response (Dkt. No. 38), and the defendant filed a reply. (Dkt. No. 42). On April 19, 2016, this Court entered an Order denying the defendant's motion for reconsideration and alternative motion to certify interlocutory appeal. (*See* Dkt. No. 43). Thereafter, the defendant sought a writ of mandamus challenging this Court's order granting the plaintiff's motion for conditional certification. On

May 13, 2016, the Fifth Circuit remanded the matter to this Court for the limited purpose of supplementing its previous order to explain its decision granting conditional certification. Having completed the task, the Clerk of Court is hereby instructed to return the case to the Fifth Circuit panel that has the defendant's petition under review.

## II.   FACTUAL BACKGROUND

The defendant is a world leader engaged in providing management and information services and solutions in oil and gas exploration and production. In this regard, the defendant employs a category of employees under the heading "Field Engineers." According to the plaintiff, Field Engineers work outside in the environment in 12-hour shifts on 21-day rotations. (Dkt. No. 18, Exs. A, B & C). The plaintiff describes his work as "primarily physical and manual in nature" performed with "hands and tools such as hammers, to install cables and drilling equipment" leading to well productions. (*Id.*; Ex. A). He also asserts that "Field Engineers" "assist to rig-up and rig-down tools and equipment at the wellsite." (*Id.*; Exs. B, C & E). The record suggests that Field Engineers, in general, "do not hire, fire, or supervise anyone." (*Id.*). Nor do they play a role in management or have discretion over how they are to perform their job duties. (*Id.*).

The defendant describes the duties of a Field Engineer as varied, contending that the "Field Engineer" title does not define a specific job or family of jobs, but rather a "career path" where an employee is assigned to one of the defendant's "service lines that is further segmented into specific jobs." (Dkt. No. 23 at 3). It maintains that under the Field Engineer "career path," an employee is expected to perform in a field position for a "few years before progressing to management, engineering, sales, or other higher level positions based on education and experience." (*Id.*).

The defendant characterizes the plaintiff's position as that of a "Field Engineer – Slider. As a "Slider," the plaintiff "functioned as a lead engineer [with] primary responsibility for the Slider system." (*Id.*)  His job assignment included overseeing installation of the system, ensuring proper system configuration, overseeing overall job services execution, training, coaching for directional drillers and problem solving. (*Id.*)  The defendant attempts to distinguish the plaintiff's job tasks as a Field Engineer-Slider, for example, from that of a Field Specialists in an effort to distinguish between a "career path" and a "job classification."

## III. LEGAL STANDARD

Section 207(a) of the FLSA requires that covered employers compensate their nonexempt employees at overtime rates for time worked in excess of forty hours in a work week. *See* 29 U.S.C. § 207(a).[1]  Section 216(b) of the FLSA permits an employee to maintain an action

---

[1] Section 207(a) of the FLSA provides as follows:

**(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions**

**(1)** Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

**(2)** No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966—

    **(A)** for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,
    **(B)** for a workweek longer than forty-two hours during the second year from such date, or
    **(C)** for a workweek longer than forty hours after the expiration of the second year from such date,

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a).

"against any employer . . . for and in behalf of himself . . . and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). Pursuant to § 216(b), employees are permitted to "opt-in" as plaintiffs to an action by consenting in writing to become a party and filing a copy of the same in the court in which the action is pending. *Id.* The decision whether to facilitate notice to potential plaintiffs is within a district court's discretion. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 - 70, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989); *see also Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003). A district court also has discretion to modify an overly broad class definition. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931 (5th Cir. 2005) (acknowledging that a district court has discretion to modify a certification order to limit the scope of a proposed FLSA collective class).

The phrase "similarly situated," in the context as used here, is not defined by the FLSA. *See*, *e.g.*, 29 U.S.C. § 216(b). Federal district courts have generally employed two methods for evaluating whether notice to similarly-situated employees informing them of their right to join a collective action under the FLSA should be authorized--namely the two-stage class certification approach illuminated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and the spurious class action approach illustrated in *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).[2] The Fifth Circuit, in *Mooney*, found it unnecessary to conclude which of the two competing methods is more appropriate. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003). Nonetheless, the *Lusardi* two-stage approach appears to have

---

[2] The approach enunciated in *Shushan* adopts the view that the "similarly situated" inquiry is coextensive with Rule 23 class certification. Thus, when employing this methodology, the court looks at numerosity, commonality, typicality and adequacy of representation to determine whether a class should be certified. *See Mooney,* 54 F.3d at 1214.

become the preferred method utilized by federal courts within the Fifth Circuit when conducting an analysis to determine whether potential class members are "similarly situated." *See Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008) (referring to the "two-step" Lusardi approach as the "typical" method for administering collective actions); *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *2 (S.D. Tex. May 2, 2008) ("The prevailing analysis used by federal courts . . . adopted by the Court in this case, is the two-stage test set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)."); *Johnson v. Big Lots Stores, Inc.*, Nos. 04–3201, 05–6627, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since *Mooney* district courts in the Fifth Circuit have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA."); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ( "[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."). This Court, therefore, will adhere to the *Lusardi* approach.

The Fifth Circuit, in *Mooney*, characterized the analysis to be conducted under the *Lusardi* approach as follows:

> Under *Lusardi*, the trial court approaches the 'similarly situated' inquiry via a two-step analysis. The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision--usually based only on the pleadings and any affidavits which have been submitted--whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more

> information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-*i.e.* the original plaintiffs--proceed to trial on their individual claims.

*Mooney*, 54 F.3d at 1213 – 14 (internal citations omitted). Since the instant action is at the "notice stage" of the *Lusardi* test, this Court's decision to certify must be "made using a fairly lenient standard." *Id.*

## IV.   ANALYSIS AND DISCUSSION

At the notice stage of the *Lusardi* test, a district court's decision—as to whether potential collective action members should be notified--is generally based on the pleadings and any affidavits that have been submitted. *Mooney*, 54 F.3d at 1214. This "test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006). Courts, however, are split concerning the requirement of proof of the third element—establishing the existence of similarly situated individuals who wish to opt-in to the lawsuit. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.*, Civil Action No. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (rejecting contention that FLSA collective action can be certified only if the plaintiff establishes that other individuals are interested in opting in to the lawsuit). Since the third element is neither a statutory requirement nor a directive consistent with the Supreme Court's mandate that the FLSA be liberally construed to effect its purposes, this Court does not require proof of such an element by the plaintiff at this stage. *See Tony & Susan Alamo Found. v. Sec'y*

*of Labor,* 471 U.S. 290, 296, 105 S. Ct. 1953, 85 L. Ed.2d 278 (1985); *see also, e.g., Heckler v. DK Funding, LLC*, 502 F. Supp.2d 777, 780 (N.D. Ill. 2007); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002).

In determining whether notice should be authorized and issued, courts require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8 (quoting *Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. at 407). Certification should be denied by a court, however, "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (quoting *England v. New Century Fin. Corp.,* 370 F. Supp.2d 504, 507 (M.D. La. 2005) (other citation omitted).

In this case, the plaintiff bears the burden of making a preliminary factual showing that similarly situated individuals exist. *England*, 370 F. Supp.2d at 507. To satisfy the first element of the test under the *Lusardi* approach, the plaintiffs need only show that there is a reasonable basis for believing that other aggrieved individuals exist. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (other citations omitted). In support of his motion for conditional certification, the plaintiff has attached his own declaration as well as the declarations of Ricardo Cristan and Emmanuel Rivera, all of whom state that despite regularly working more than forty hours per week they did not receive overtime compensation and were, instead, paid a base salary plus a ticket or job bonus. (*See* Dkt. No. 18, Exs. A, B, & C). The declarations submitted establish that "Field Engineers" are paid a salary plus a job bonus, without overtime compensation and generally perform the same physical and manual labor. The declarations further demonstrate that the plaintiff, Cristan and Rivera are aware of other similarly situated

laborers who would be interested in learning of their rights and the potential opportunity to join this lawsuit. *Id.* Accordingly, the plaintiffs have satisfied the first element of the *Lusardi* test required at the notice stage. The record suggests that there are currently four opt-in plaintiffs for this action.

As set forth above, the second element of the *Lusardi* test considers whether the putative class members are "similarly situated." *Mooney*, 54 F.3d at 1214. The plaintiff alleges that the defendant maintained a nationwide pay practice of misclassifying Field Engineers as exempt from the FLSA's overtime requirements. In seeking to establish that the responsibilities within the Field Engineer "career path" vary so significantly as to preclude conditional certification for such a putative class in this case, the defendant argues that the scope of work included within the Field Engineer "career path" is so vast that it can be divided into 23 job categories, encompassing a variety of projects in different geographic locations, tasks performed under different supervisors and positions, with different job titles and assignments such that it cannot be said that Field Engineers are "similarly situated."

Indeed, the evidence presented suggests that, within the Field Engineer "career path," as the defendant would term it, the employees encompassed within the purported 23 job categories, nevertheless: performed similar job duties; received similar pay; worked outside in the field environment in 12-hour shifts on 21-day rotations; did not possess the ability to hire, terminate or supervise other employees, except by specific assignments within a crew; did not exercise discretion over how their job duties were to proceed; worked in excess of 40 hours per week; and were not paid overtime compensation in spite of the fact that they performed non-exempt, physical and manual labor. Although members of the Field Engineer "career path" may have had to work on various projects and in various locations from time to time, their basic duties,

based on the information presented, appear to be similar. Putative class members' jobs need only be similar--not identical. *See Heeg*, 907 F. Supp. 2d at 862.

The Court is of the opinion that in an employment setting where the employer engages in a world-wide oil and gas industry operation, the fact that the duties of employees may vary slightly from local to local or position to position does not mean that the employees are not "similarly situated." Here, the employees work under the umbrella of the "Field Engineer" career path as the defendant supposes, where job duties may, depend upon the specific project. Therefore, an individual may perform tasks at one location that are not fully repeated at another, or exchange duties at the same location. Hence, job duty assignments are configured or arranged pursuant to the defendant's policies and project needs or demands at the time, but cannot be said to be significantly different.

Where employees, with alternating duty assignments, share in a finite set of duties, the employees are "similarly situated." The differences proffered by the defendant do not controvert the evidence in the record that the job duties of Field Engineers or those following the "Field Engineer career path" are similar. Indeed, this is not a case where the "'action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Simmons v. T–Mobile USA, Inc.*, No. H–06–1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007) (quoting *England v. New Century Fin. Corp.,* 370 F. Supp.2d 504, 507 (M.D. La. 2005)). Uniformity in every aspect of employment need not be found in order to make a determination as to whether a class of employees are "similarly situated." *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *24 (S.D. Tex. Aug. 10, 2012) (internal citations omitted). Further, this Court's decision to grant

conditional certification at this juncture does not prevent the defendant from filing a motion to decertify after discovery has largely been completed. *See Mooney*, 54 F.3d at 1214.

## V.   CONCLUSION

Based on the foregoing analysis and discussion, the Court finds that under the lenient standard utilized at the notice stage under the *Lusardi* approach, the plaintiff's allegations are sufficient to permit initial conditional certification of the instant action as a collective action. It is, therefore, ORDERED that:

1. The plaintiff's motion for conditional certification is **GRANTED**;

2. The defendant's request to conduct pre-conditional certification discovery is **DENIED**.

3. The defendant is directed to produce to the plaintiff the putative class members' names, last known mailing addresses and email addresses pursuant to the plaintiff's request; and

4. The defendant is directed to produce to the plaintiff telephone numbers for putative class members for whom both regular mail and e-mail notice has been returned as undeliverable within 20 business days of receipt of written notice from the plaintiff's counsel for such information.

It is so **ORDERED**.

SIGNED on this 29th day of June, 2016.

_____
Kenneth M. Hoyt
United States District Judge